RICHARD CROMWELL and FRANK B. SLOAN, trading as C. SIDNEY NORRIS & Co. *vs.* THE ROYAL CANADIAN INSURANCE COMPANY, Garnishee of PATRICK FOLEY.

*Attachment under Act of 1868, ch. 471, sec. 211, against a foreign Corporation as garnishee—Question as to whether the cause of action arose under a Maryland Contract, and when Motion to quash may be made.*

C. and S., citizens of Maryland, having a claim against F. who was a resident of Washington City, in the District of Columbia, sued out of Baltimore City Court an attachment on warrant against him as a non-resident, and caused the same to be laid in the hands of the R. C. Ins. Co. as garnishee. The R. C. Ins. Co. was a corporation created by the laws of Canada, exercising franchises in this State, and having a branch office in the City of Baltimore. The debt sought to be attached was due to F. for a loss by fire on the goods of the latter in a store in Washington, under a policy of insurance issued by the garnishee. In the printed heading of the policy were contained the words "Baltimore Branch." And it is stated in the concluding part of the policy, which purports to be dated at Baltimore, that two of the directors of the company, by their attorney, had signed it and caused the common seal of the company to be affixed thereto. After the engraved signatures of the two directors were the words "by their attorney, J. A. R., Manager Baltimore Branch" Below this was the following: "Not valid unless countersigned by the duly authorized agent of this company at Washington, D. C.," and this was signed "B. F. S., Agent." The Baltimore branch office was simply one of the agencies of the Company whose home office was at Montreal. J. A. R. was the general manager of The Balti-

Cromwell & Sloan *vs.* Royal Canadian Ins. Co., Garn.

more Branch Office, and as such was manager of the district for the Southern States including the District of Columbia. The Company had also a Washington Agency at Washington, the agent there appointed by J. A. R. subject to the right of rejection or removal by the Company. At the time the policy was issued, B. F. S. was the agent of the Company at Washington, and it was in fact *countersigned by him at Washington, and there delivered by him* as the agent of the Company to F., who was then and had since continued to be a resident of that city. It was J. A. R's. custom to sign policies as the general manager of the Baltimore Branch Office, and then send them *in blank* to the Washington and other local agents of the Company, who would *fill them up, countersign and deliver them to persons who from time to time insured in the Company;* and the policy in question was so signed by him as manager of the Baltimore Branch and sent *in blank to the Washington agent.* On a motion to quash the attachment, as unauthorized by the Act of 1868, ch. 471, sec. 211, it was HELD:

1st. That this could not be regarded as a Maryland contract, and the attachment based thereon could not be sustained under said Act.

2nd. That it was not too late for the garnishee to make the motion to quash, after having appeared and confessed assets, and expressed its willingness to abide by the order of the Court in the premises.

The Act of 1868, ch. 471, sec. 211, above referred to, provides that suits against foreign corporations exercising franchises in this State, may be brought in any of the Courts of this State by a resident of this State for any cause of action; and by a plaintiff not a resident of this State, when the cause of action has arisen or the subject of the action shall be situated in this State." HELD:

That this enactment is not a grant of a *privilege* or *immunity from suit,* to parties otherwise liable to be sued in the Courts of the State and subject to their jurisdiction, but the grant of a *restricted* and *limited* jurisdiction to the Courts themselves over certain suits against foreign corporations not otherwise compelled to submit to the jurisdiction of any Court of the State.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*John Scott, Jr.*, for the appellants.

By the contract itself this is made a Baltimore contract. It issued from Baltimore. The insured makes his application, which goes to the general manager. The assent of the company, which brings the cause of action into existence, is given by the Baltimore manager. The commencement, origin and rise of the contract occurs there; it is agreed that the date shall be at Baltimore, and on that day it goes into effect. It belongs to the Baltimore branch in all essential respects. We respectfully insist that it is to be governed by Baltimore laws, and that there is every reason why Baltimore should be the place where the company should stand suit on such an instrument.

The authorities on this subject are in conflict. In none has the precise point to be determined here arisen. The Massachusetts cases are opposed to our views, but the Court will find them sustained by the uniform current of the New York decisions. *Western vs. Genesee Mut. Ins. Co.*, 2 *Kernan*, 261; *Hyde vs. Goodnow*, 3 *Comstock*, 269, &c.; *Huntley vs. Merrill*, 32 *Barbour*, 627; *Cox and Dick vs. U. S.*, 6 *Pet. S. C. R.*, 203, &c.

It is, moreover, to be remembered that the phraseology of the Act of 1868 does not require that the cause of action should be *made* in this State. It is sufficient if it *arises* here. No injustice is done to the company in permitting suit, if their agreement has any connection with Maryland. The proofs relating to its origin are as important as those which affect its consummation. The law does not look to the place where the policy was finally completed. Its place of birth, the locality where it was inchoate, determines the jurisdiction of our Courts. Now none of the cases on either side deny that the place of the approval of the application and of the company's assent that the policy should go into operation is the place where the contract arose. All seem to admit that the assent to the application first gives the contract existence. Other

ceremonies, such as delivery, &c., may be needed for its completion, and if they are withheld, it may be that the transaction is never finished; but vitality is infused by the assent to the insured's proposal. The creature has then come into existence, though it may be smothered before it is developed. This vitalizing assent was given by the general manager of the Baltimore branch, and the place where it was given was at Baltimore. We fail to see how the Courts of that city can be objected to, either on technical or equitable grounds.

The question of jurisdiction raised by the motions to quash is not an objection going to the jurisdiction of the Court of the same nature as a defect in the affidavit or the voucher, but a mere personal privilege of the garnishee which he could waive or insist on at his pleasure. There is no doubt that in the former class of cases the error is beyond remedy. The Court cannot entertain the action for want of power, and the parties have no means of supplying the deficiency. Here, however, the attachment issued properly. The defendant and garnishee are both amenable to its jurisdiction. The contract is of a nature that the Court can deal with. The defence is purely a personal privilege.

The books are full of analogous cases. Our Code permits suit against the resident of a different county only after the preliminary return of *non est*. In case this precedent condition is not performed, the defendant can plead to the jurisdiction. It has been decided that he can also avail himself of the defence by motion, as in this case, and that the judgment of the Court on the facts can be reviewed in this forum. The analogy would seem complete. There is no doubt now that such a motion must be made before submitting to the jurisdiction of the Court, and that in Baltimore city it must take place within fifteen days after the party's appearance. *State vs. Gittings*, 35 *Md.*, 169;

*Gittings vs. State,* 33 *Md.,* 458 ; *Groom vs. Lewis,* 23 *Md.,* 137 ; *Spear vs. Griffin,* 23 *Md.,* 420.

Cases have also arisen where the United States Courts, having only a limited jurisdiction, have issued writs of attachment against parties where the party was not amenable to the process. The failure to make the objection within the appointed time was held to cure the defect. *Toland vs. Sprague,* 12 *Peters,* 331 ; *Chitty on Pl., new Ed.,* (16*th Amer. from* 7*th Eng.,*) 457, *note d.*

Again, under the very enactment involved in this case, which is a transcript from the New York statute, it has been decided that the garnishee cannot urge that the cause of action arose without the State, after he has once admitted the jurisdiction of the Court. This seems to cover the very point involved here. *Carpentier vs. Minturn,* 65 *Barbour,* 295 ; *De Bemer vs. Drew,* 39 *Howard Pr.,* 470 ; *Howard's New York Code,* 1859, *sec.* 427, *p.* 640 ; *Angell & Ames on Corporations, secs.* 405, 372, 373, 402 ; *Cook vs. Champlain Trans. Co.,* 1 *Denio,* 98.

We will further insist that the garnishee's admission of assets, and its willingness to abide by the decision of the Court, not only prevents any subsequent objection to the jurisdiction, but also brings the subject-matter of the action into this State.

Our Act of Assembly permits a non-resident to sue a foreign corporation, "when the cause of action has arisen, *or the subject of the action is situated, in this State.*" The money due by the garnishee is the subject of the action. This the garnishee has confessed, and his confession is equivalent to bringing it into Court. A confession of assets, it has been held, dissolves the garnishee's connection with the case. He is not responsible thereafter for the costs, and is not, in any sense, a party litigant. Whatever expense he incurs by the proceedings is paid out of the fund which is deemed to be, by his confession, deposited in the custody of the Court, and subject to its

order. If that be true, the subject of the action is situated here ; and our Court has jurisdiction, from the fact that it holds the property involved. It would be flagrantly inconsistent to permit the garnishee to bring the money into the Court, and thereafter to object that it had no power to make any disposition of it. *Drake on Attachments, sec.* 661.

*Henry V. D. Johns,* for the appellee.

The Court's order sustaining the motions to quash, and quashing the writ of attachment, was a correct conclusion of law upon the facts in the record.

The attachment could only have been maintained if the conditions indicated in sec. 211, ch. 471, Act of 1868, had existed in the case. *Sup. of* 1868, *p.* 95, *Art. 26, sec.* 211.

That statutory provision was recently fully considered by the Court in the case of *Myer and others vs. Liverpool, London and Globe Insurance Co., Garnishee,* 40 *Md.,* 595.

Those conditions did not exist in this case.

No direct liability existed by the foreign corporation to a resident plaintiff.

The cause of action did not arise, nor was the subject-matter of the action situated, in this State.

As between Patrick Foley and the Insurance Company, the cause of action arose out of a policy of insurance upon Washington property, which was in no sense a Maryland contract, but purely a District of Columbia contract.

The policy was in fact countersigned and delivered at Washington, D. C., by B. F. Steiger, who was at the time the agent of the Royal Canadian Insurance Company, at the Washington agency.

The policy itself, under which the cause of action arose, by its very terms provided that it was not to become a valid contract, unless countersigned by the duly authorized agent of the company at Washington, D. C.

This made it a District of Columbia contract.  *Daniel and another vs Hudson River Fire Ins. Co.*, 12 *Cushing*, 422.

It takes effect from delivery, and the date on the instrument is not conclusive evidence of delivery.  Parol proof may be admitted as to time of delivery.  *Good vs. Martin*, 5. *Otto*, 96 ; *Bouvier's Law Dic.*, 4th *Ed.*, *word "Date."*

The fact that the policy was one of those distributed in blank from the Baltimore Branch Office of the Royal Canadian Insurance Company, whose home office was at Montreal, Canada, did not affect the character of the contract as a District of Columbia contract.

Branch offices of corporations with their local boards are not distinct corporations.  They are but agencies. *Robinson vs. The International Lf. Assn. Co.*, *of London*, *Am. L. Reg.*, *N. S.*, *Vol.* 8, *p.* 166.

The motion to quash may be made by defendant, or even by a third party claiming an interest in the property attached.  *H. & M. on Attach.*, *sec.* 305, and cases cited ; *Good vs. Barnes*, 15 *Md.*,576.

The garnishee may avail himself of the want of jurisdiction at any time, even on error or appeal, though the point was not raised below.  *H. & M. on Attach.*, *sec.* 201, and cases cited ; *Boarman vs. Israel*, 1 *Gill*, 485 ; *Dickinson vs. Barnes*, 3 *Gill*, 492.

Want of jurisdiction, if apparent on the face of the papers, will be noticed by the Court, *sua sponte*.  *Gough vs. Crane*, 3 *Md. Ch. Dec.*, 136 ; *Dunnock vs. Dunnock*, 3 *Md. Ch. Dec.*, 140.

In this case the Court had not jurisdiction of the subject-matter.

Where the law does not confer jurisdiction on the subject-matter of the action, no consent given by the parties will be of any avail, even though there should be an express agreement not to raise the question.  And the objection may be interposed at any time, since in that case

there can be *no waiver* of it. *Dudley vs. Mayhew*, 3 *N. Y.*, (3 *Comst.*) 9 ; 1 *Wait's Actions and Defences*, 49 ; *Harriott vs. N. J. R. R. Co.*, 8 *Abbot's Pr.*, 286, 296.

As to the test of jurisdiction. If plaintiff presents such a case that on demurrer the Court would render a judgment in his favor, it would be a case of undoubted jurisdiction, otherwise not.

This sec. 211 of Art. 26, giving affirmatively permission to non-resident plaintiffs to bring certain subject-matters into our Courts, is by implication a prohibition upon their bringing into our Courts subject-matters not within the purview, &c. 1 *Kent, marg.*, 467, cases cited in note (*b.*)

There is nothing in the record to show that there was any property of the defendants in the State of Maryland, the only admission was that there were funds to a certain amount in the hands of the foreign corporation, whose *habitat* was Montreal, Canada.

MILLER, J., delivered the opinion of the Court.

The Act of 1868, ch. 471, sec. 211, provides that suits against foreign corporations exercising franchises in this State, may be brought in any of the Courts of this State, "by a resident of this State for any cause of action ; and by a plaintiff not a resident of this State, when the cause of action has arisen, or the subject of the action shall be situated, in this State." In the case of *Myer vs. the Liverpool, London, and Globe Ins. Co., Garnishee of Bittinger & Bro.*, 40 *Md.*, 595, it was decided that to bring a case within the first clause of this provision the liability sought to be enforced must be a direct liability of the corporation to the resident plaintiff, and that a resident plaintiff in an *attachment* against a non-resident debtor, cannot, under the second clause, subject the corporation to the process of *garnishment* in a Maryland Court, to affect a debt due by the corporation to the non-resident debtor on

a contract which is made, and the subject of which is situated, in another State.

In the present case, the appellants, citizens of this State, having a claim against Patrick Foley, who resided in Washington City, in the District of Columbia, sued out of Baltimore City Court an attachment on warrant against him as a non-resident, and caused the same to be laid in the hands of The Royal Canadian Insurance Company as garnishee, a corporation created by the laws of Canada, exercising franchises in this State, and having a branch office in the City of Baltimore.   The purpose of the appellants was to attach a debt due by the Company to Foley for a loss, by fire, on goods of the latter in a store in Washington, under a policy of insurance issued by the company.   It is conceded the case in its facts is identical with that of *Myer's*, in 40 *Md.*, 595, unless this policy of insurance is to be considered and treated as a Maryland contract.   Can it be so regarded?   The printed heading of the instrument is—" *Baltimore Branch*—THE ROYAL CANADIAN INSURANCE COMPANY—*Capital* $6,000,000—FIRE AND MARINE—*Montreal.*"   In the body of it the Company, in the usual form, professes to insure " P. Foley, Esq., of Washington, D. C.," to an amount not exceeding $5000 on his stock of goods kept for sale in a certain described store in Washington, for one year from the 4th of September, 1875, at noon, and concludes, "In witness whereof, we, two of the directors of the said company, by our attorney, have hereunto set our hands, and have caused the common seal of said company to be hereunto affixed. *Dated at Baltimore*, this fourth day of September, 1875." Here follows the engraved names of two Directors, and below them:—"By their attorney, J. A. RIGBY, manager Baltimore Branch."   Below this is the following:—" not valid unless countersigned by the duly authorized agent of this company at Washington, D. C.," and this is signed, " B. F. STEIGER, agent."   It might, perhaps, be inferred

from the heading, the place of date, and the signing by the manager of the Baltimore Branch, appearing on the face of this policy, that it was filled up, signed, and delivered in the City of Baltimore notwithstanding the assured is described as residing in Washington, and the property insured as located in that city. But this inference is repelled by the testimony in the record. It is proved that this Baltimore Branch office was simply one of the agencies of this company whose home office was at Montreal; that Rigby was the general manager of the Baltimore Branch office, and as such was the manager of the district for the Southern States, including the District of Columbia; that the company had also a Washington agency at Washington; that Rigby appointed the person to act as agent for the company at Washington and notified the home office thereof, and the latter had the right to reject the person he so appointed for that agency, and the right at all times to remove such agent; that the Washington agent was the agent of the home company, though in some matters he would communicate with Rigby; that at the time this policy was issued Steiger was the agent of the company at Washington; that it was in fact *countersigned by Steiger at Washington and there delivered by him as the agent of the company to Foley,* who was then and has since continued to be a resident of that city ; that it was Rigby's custom to sign policies as the general manager of the Baltimore Branch office and send them *in blank* to the Washington and other local agents of the company, who would *fill them up, countersign and deliver them to persons who from time to time insured in the company;* that he would sometimes send as many as fifty of such blank policies to an agent of the company at a time, and that the *policy in this case* was so signed by him as manager of the Baltimore Branch, *and sent in blank to the Washington agent.* This is all the testimony the record contains, but it shows very clearly that when this paper left the City of Balti-

more it was an incomplete, unexecuted instrument, forming and evidencing a contract with no one; that it was completed, countersigned and delivered in Washington, where the assured resided and where the property insured was situated; and that, in point of fact, the contract of insurance was there made with Foley by an agent duly authorized by the company to effect insurances in its behalf, and to fill up, countersign and deliver policies, embodying and evidencing such contract. In view of these facts it seems to us plain that this cannot be regarded as a Maryland contract. But it is said the authorities on this subject are in conflict, that the Courts of Massachusetts have decided the question one way and those of New York another. Assuming this to be so, still the conclusion we have reached in this case is not in conflict with the decisions in either of these States. In the case of *Daniels vs. Hudson River Fire Ins. Co.*, 12 *Cush.*, 416, the insurance was effected upon property situated in Massachusetts by a New York Company which had its office and principal place of business at Waterford, in that State. The policy purported to be dated at Waterford and there signed by the President and Secretary of the company, but the negotiation was had by an agent of the company in Massachusetts, and by the terms of the instrument it was not to be valid unless countersigned by their agent at Worcester, and it was so countersigned and delivered by him, and the Court, by C. J., SHAW, said, "there can be no doubt that this is a contract made in Massachusetts, and to be governed and construed by the laws of this State; for though it was dated in New York, and signed by the President and Secretary there, yet it took effect as a contract from the counter-signature and delivery of the policy in Massachusetts." This decision was followed by that of *Heebner vs. Eagle Insurance Company of Cincinnati*, 10 *Gray*, 131, where the defendant corporation was a company created by the laws of Ohio and established at Cincinnati, but had

an agent in Boston, duly authorized to make insurance contracts, who was furnished with *blank policies signed by the officers of the company*, in which it was declared that they should not take effect until countersigned by said agent, and the contract was made, and the policy *filled up, signed and delivered in Boston*. Upon these facts, the Court said, "the contract of insurance was finally executed and delivered in this State. It was, therefore, a contract made here, and the law of this State is to govern its construction and interpretation without any reference to the domicil of the corporation liable upon it." This was followed by the case of *Thwing vs. Great Western Ins. Co.*, 111 *Mass.*, 109, where the Court held that as the policy was delivered and accepted and the premium note signed by the assured in Boston, the contract was, therefore, made in that State. In this last case it does not appear that the Boston agent of the foreign corporation had authority to make contracts of insurance or was entrusted with blank policies signed by the officers of the company with power to fill them up, and from what we can gather from the report of the case on this point, we assume he was not clothed with such authority. These are the Massachusetts cases, and according to them the contract in the case before us was undoubtedly made in the District of Columbia and not in Maryland. The first of the New York decisions on this subject is the case of *Hyde vs. Goodnow*, 3 *Coms.*, 266. The facts of that case are briefly these: a New York Mutual Insurance Company insured property in Ohio for a resident of that State, who made application for the insurance, through an agent of the company. This agent in Ohio received the application and the premium note signed by the applicant, forwarded them to the office of the company in New York, and the company, upon receiving the same, issued a policy from their office in that State and mailed it to the assured in Ohio. The Court held that this was a contract made in the State of New York, but upon the

express grounds stated in the opinion, that the Ohio agent was simply authorized to make surveys and receive applications for insurance, and had no power, nor did he assume, to do anything that would bind the company; that the application which he forwarded was in no sense a contract until accepted by the company, but when they received and accepted it by consenting to insure, issued their policy and put it in the mail for transmission, from that moment it became a binding and irrevocable contract between the parties; and inasmuch as the acceptance of the application, the signing, issuing and mailing of the policy all took place in New York, it was a contract made in that State and not in Ohio. These were the grounds of that decision. In *Western vs. Genesee Mutual Ins. Co.*, 2 *Kernan*, 258, the *same state of facts* existed except that the policy, instead of being transmitted to the assured by mail was sent to the company's agent to be delivered to him, which the Court held did not alter the rule, and said: "When the application was received and approved by the company, and the policy executed and put in the course of transmission to the insured, the contract was complete, and both parties became bound, so that if a loss had occurred before its actual receipt by the insured the company would have been responsible. The contract was consummated by the final assent on the part of the company and upon that event and not upon its delivery to the assured became operative. The validity of the contract, is, therefore, to be determined by the law of New York. Here it was made and here it was to be performed." This case was followed by that of *Huntley vs. Merrill*, 32 *Barb.*, 656, where the facts were precisely the same as in *Hyde vs. Goodnow*. The distinction between these New York cases and the one we are considering is plain and broad. In each of them the agent was an agent of limited authority having no power to issue policies or make contracts, or even to ratify or approve applications for insurance.

He was not entrusted with blank policies signed by the officers of the company which he was authorized to fill up, countersign and deliver to parties with whom he might effect contracts of insurance, but in each case, the policy when it left the home office of the company was a filled up, completed, and perfect instrument.    In these essential particulars the exact reverse was the case with reference to the powers of the Washington agent of this company and the policy which he issued to Foley, and in holding it a contract made in Washington and not in Maryland, we decide nothing in conflict with what has been decided by the Courts of New York.    It follows that our decision in *Myer's Case* is conclusive of this and the judgment must be affirmed unless the second proposition taken by the appellants' counsel is tenable, and that we now proceed to consider.

It has been most earnestly and confidently argued that the defence made by the motion to quash the attachment is not of the same nature as a defect in the affidavit or voucher, but is a mere *personal privilege* to the garnishee corporation, which it *alone* can rely on or waive at pleasure, and that having once appeared and submitted itself to the jurisdiction of the Court, it could not afterwards question that jurisdiction.    The record shows that the attachment was issued on the 22nd of August, 1876, returnable on the second Monday of September following.    On the day of its issue, it was laid in the hands of the company by service on its agent, and on the 17th of October, 1876, the defendant, Foley, and the garnishee, both appeared, and the former moved to quash the writ because the contract of insurance, on which the attachment was laid, was not made in Maryland, while the latter confessed it had in hand the sum of $975, due to Foley, under this policy, and expressed its willingness to do and abide by such order as the Court may see fit in the exercise of its discretion to pass in the premises.    Nothing further appears to have

been done in the case until the 6th of November, 1877, when the garnishee also moved to quash the attachment on the ground that it was a foreign corporation exercising certain franchises in Maryland, but having its *habitat* in Canada, and that the cause of action of Foley against the company did not arise within this State, nor was the subject-matter of his action situated in this State, and therefore a Maryland Court has no jurisdiction to entertain the attachment and process of garnishment against the assets of Foley, in the hands of the said garnishee.   This motion, it is insisted, could not be made by the garnishee after it had previously submitted itself to the jurisdiction of the Court, and it is argued that the question arises in the same way, and is to be viewed in the same light as if Foley had sued the company on this policy in a Maryland Court, and the objection to the jurisdiction had been made in that suit after the company had appeared to the action and pleaded to the merits   Now, assuming this to be the correct mode of testing the question, and that Foley, the defendant in the attachment, had no right to raise the objection, let us consider it as if presented in the way supposed.   The provision in the section of our Act of 1868, which we have quoted, is a peculiar one.   It is identical with and was probably taken from a section of the Code of New York, of 1849, which we shall presently cite, and the Courts of that State have in several instances considered this very question.   But before referring to these cases it is important to notice the legislation of that State on this subject, in force when these decisions were made, for otherwise it is difficult to understand them.   By that legislation it was provided that suits may be brought in the Supreme Court, in the Superior Court of the City of New York, and in the Court of Common Pleas for the city and county of New York, against foreign corporations, 1st, "For the recovery of any debt or damages whether liquidated or not, arising upon contracts made, executed, or delivered within this

State, or upon any cause of action arising thereon." (Act of 1849, ch. 107, and Code of 1849, sec 33, sub-sec. 3.) And, 2nd, " By a resident of this State for any cause of action ; and by a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State " (Code of 1849, sec. 427.) The first of these provisions has not been incorporated in our legislation, but the second, as will be seen, is precisely the same as that contained in sec. 211 of our Act of 1868. Now in *Harriott vs. New Jersey Railroad Company*, 8 *Abb. Pr.*, 284, it was plain that the facts did not bring the case within either provision of the New York statutes The plaintiff was a non-resident, the defendant a foreign corporation, and the suit was brought in the Court of Common Pleas for damages for negligently and carelessly killing the plaintiff's horse in New Jersey. The company appeared and pleaded to the merits and afterwards moved to dismiss the suit on the ground that the Court had no jurisdiction, and that was the only question in the case. It was there urged in argument that as the defendant had appeared and answered without raising this objection, and as the Court had jurisdiction of cases brought to recover damages for injuries done by railroad companies, the question was one which related to the person and not to the subject-matter, but the Court, by BRADY, J , said : " the answer to this proposition is that the Statute has declared in effect that this Court shall not have jurisdiction of such actions against a foreign corporation, unless the plaintiff resides in this State or the cause of action arose therein, and the objection of the defendant does not therefore raise a question of jurisdiction over the person," and the decision in substance was that the statutes had declared that actions against foreign corporations could be brought only in the cases specified, and as none of the requisites of the statutes existed in that case, the objection to the jurisdiction of the Court could

be taken at any time.   Again in the case of *Jones vs. Norwich & New York Transportation Company*, 50 *Barb.*, 193, there was the same state of facts as to the parties, and the question of jurisdiction was raised and considered by the Court itself on appeal from a judgment in favor of the plaintiff.   It was conceded the question was the same as if the defendant had voluntarily appeared and submitted to the jurisdiction up to the time of appeal, and the Court by Sutherland, J., say, "no doubt the defendants could raise this question of jurisdiction for the first time on this appeal," and decide that it was a question whether the Court had "jurisdiction over the *case* or cause of action." The jurisdiction was there sustained upon the ground that the action was for damages arising upon a contract made within the State, and was therefore within the Act of 1849, ch. 107, which expressly gave the Court jurisdiction in such a case.   It must be conceded a different construction was adopted in the case of *Carpentier vs. Minturn*, 65 *Barb.*, 293.   But that case was decided by a Court composed of only two Judges, and neither of the antecedent decisions on this question are noticed or reviewed in the opinion.   The decided weight of judicial authority in these Courts sustains the position that this objection may be raised after as well as before a plea to the merits.   But apart from authority, and treating the question as a new one, why should we not reach the same conclusion?   The purpose of the Legislature in enacting this and other provisions in reference to suits against foreign corporations doing business in this State, seems to have been to make them amenable to suits in our Courts by our own citizens, and to provide that citizens of other States shall use our Courts for suits against them *only in cases* where the cause of action has arisen or the subject of the action is situated in this State.   It was quite competent for the Legislature so to provide, and they doubtless deemed it expedient that our people should not be burdened with the

expense attending litigation between these foreign corporations and citizens of other States, save in the cases specified. In our opinion this enactment is not a grant of a *privilege* or *immunity* from suit, to parties otherwise liable to be sued in the Courts of the State, and subject to their jurisdiction, but the grant of a *restricted* and *limited* jurisdiction to the Courts themselves over *certain suits* against foreign corporations not otherwise compelled to submit to the jurisdiction of any Court of the State. Viewed in this light it is very different from the provision of our Code that no person shall be sued out of the county of his residence. The purpose of that was to protect a citizen, absolutely amenable to suit in his own county, from the inconvenience of being sued away from his home, and it has been very properly held to be a privilege or exemption which a party cannot avail himself of after the time allowed for dilatory pleas. *Ockerme vs. Gittings*, 35 *Md.*, 169. Being therefore of opinion that the motion to quash made by the garnishee must be sustained, nothing need be said about that made by the defendant.

*Judgment affirmed.*

(Decided 28th June, 1878.)