## SUPERIOR COURT OF BALTIMORE CITY

Filed February 28, 1893.

JOSEPH A. WHITE, ET. AL.

VS.

DOBLER & MUDGE, GARNISHEES OF THE LYNCHBURG PULP & PAPER COMPANY.

*William Reynolds* for plaintiffs.
*John J. Dobler* for garnishees.

RITCHIE, J.—

Attachments against Foreign Corporations.—In a suit by a non-resident against a foreign corporation on a promissory note, the Superior Court has jurisdiction of the subject matter, although the note was made and the cause of action arose in another State: and property in Maryland belonging to such a corporation is liable to attachment.

This is a motion by Dobler & Mudge to quash an attachment laid in their hands as garnishees of the Lynchburg Pulp and Paper Company. The plaintiffs are citizens of Pennsylvania, the defendant is a corporation of the State of Virginia, the indebtedness upon which the attachment issued is an overdue promissory note of the defendant, made in Virginia, and for goods sold outside of this State, the garnishees are citizens of Baltimore, and confess that they are indebted to the Paper Company, and also have in their possession certain merchandise belonging to the said company, and consigned by it to them as commission merchants for sale. The ground of the motion to quash is that the plaintiffs being non-residents, and the defendant a foreign corporation, this Court, under Section 297 of Article 23 of the Code (Sec. 211 of Act of 1868, Ch. 471) has no jurisdiction in the premises, because the cause of action did not arise in this State.

Section 297 provides that suits may be brought in any Court of this State "against any corporation not incorporated under its laws, but deemed to hold and exercise franchises herein," by a resident of this State, for any cause of action; "and by a plaintiff not a resident of this State when the cause of action has arisen, or the subject of the action shall be situated, in this State."

It is contended by the garnishees that this section, in actions against foreign corporations confers a new and limited jurisdiction over *the subject matter* of the suit; or, if not the grant of a new jurisdiction, that it is, as respects the subject matter, a *limitation*

on the previous jurisdiction of our Courts to the cases specified, and that as the cause of action here sued on is not, as between the parties to this case, within the terms of the statute, the Court, in either view, has no jurisdiction of the subject matter and the attachment proceedings are therefore void. If it be true that the Court has no jurisdiction over the subject matter the attachment must be quashed, because the writ cannot lawfully issue except as incidental to a cause of action over which the Court has jurisdiction. If it were to issue otherwise the defendant could move to quash, or plead to the jurisdiction in the short note case, and with the abatement of the short note case the attachment would fall.

The statute however is not the grant of any new jurisdiction as regards the subject matter of the suit. Our Courts of general jurisdiction have jurisdiction of all personal actions of a transitory nature arising at common law, as between any plaintiffs and any defendants, and no matter where the cause of action may have arisen.

Ash vs. Railroad, 72 Md. 148; Dennick vs. Railroad, 103 U. S. 17; Robinson vs. Oceanic Co., 112 N. Y. 315; Fairfax Co. vs. Chambers, DAILY RECORD, April 2d, 1892.

The statute did not therefore, in the cases mentioned, confer jurisdiction over the subject matter of the suit; that, the Courts aready had; what it did was to require the corporation *to appear to the suit*. Unless the statute, therefore, is to be construed as a limitation on the previous jurisdiction, the Court has jurisdiction of the cause of action here sued on.

It has been held elsewhere that the operation of a similar statute was to take away all jurisdiction which the Court might otherwise have had over causes of action other than those mentioned in the statute, and certain Maryland cases hereafter considered have been construed as holding that our Courts have no jurisdiction in a suit by a non-resident against a foreign corporation unless the cause of action has arisen, or the subject of the action is situated, in this State. But I do not think that such is the effect of the statute, nor do I understand that the question here presented has been decided by any of the Mary-

322

land cases relied on by the garnishees. In the case of a non-resident individual defendant under existing laws, or of a foreign corporation apart from Section 297, there can be no doubt that the Court would have jurisdiction, and that the property of either found in Maryland would be liable to attachment at the suit of a non-resident plaintiff, whether the indebtedness arose in this State or not, and I do not think the section referred to intended to work a discrimination in favor of foreign corporations, or to impair the operation of our attachment laws. Our Courts before the statute had jurisdiction of causes of action against foreign corporations as fully as against other non-residents, and also over property in the State belonging to them, but they had none over their persons unless they voluntarily submitted to our process, and the purpose of the statute, in my judgment, was, not to take away any remedies that creditors had under existing laws, but to increase the control of the State over the corporations by requiring such of them as transacted business in Maryland to submit to the jurisdiction of our Courts in the cases provided for, to the end that they might be subject to judgments *in personam*. It was to give an additional remedy to the creditor, not immunity to the corporation.

In considering the impairment of the remedy by attachment, which it is claimed has been wrought by Section 297, and for the aid it may give in construing that section, it is proper to notice the policy and scope of our attachment laws. Under the Act of 1795, Ch. 56, any citizen of any other State had the right to an attachment in our Courts against a non-resident. It having been held in Shivers vs. Wilson, 5 H. & J. 130, and other cases that the right under 1795 was limited to citizens of a State, the Act of 1825, Ch. 114, was passed under which any individual who was an inhabitant of any part of the United States, whether of a State or territory, might avail of the writ. By the Act of 1832, Ch. 280, corporations were included, and by the Act of 1854, Ch. 153 (Code, 1888, Art. 9, Sec. 1), all restrictions as to residence were removed, and now an attachment proceeding against a non-resident for debt may be instituted "by

any plaintiff competent to sue." Poe's Practice, Sec. 503.

The design of the attachment laws was to give our own citizens "and the citizens of the United States a remedy against debtors residing out of the reach of the process of the Court." Risewick vs. Davis, 19 Md. 91. The right is now "common to all persons, natural or artificial, who can sue in our Courts." Ib. 92.

"The great purposes of the act are, by seizing the property of a debtor, to compel his appearance to answer the demand of the plaintiff, when, from non-residence or flight, he is beyond the process of our judicial tribunals, and on failure of appearance, to apply such property to the just end of satisfying his debts." Ib. 91.

Such is the policy of the law and such are the persons entitled to the writ. In respect to the indebtedness there is not, and I believe never has been (unless by the section in question) any limitation relating to the place where it may have arisen. In respect to parties defendant it was provided by the Act of 1795, Ch. 56, that the property of every non-resident person should be subject to the writ. By the Act of 1832, Ch. 280, the writ was made to apply to non-resident corporations "to the same effect as if such corporations were natural persons," and by the Code of 1860, Art. 10, Sec. 2, it was and by the Code of 1888, Art. 9, Sec. 2, it is now provided, "that any corporation not chartered by this State * * * may be made a defendant as other non-residents."

It thus seems clear that the writ is a remedial process and that the policy of our laws has been to give the benefit of it to any creditor competent to sue, without regard to residence, and to subject to its operation the property in the State of every non-resident, individual or corporate, whether the indebtedness arose in this State or not.

Notwithstanding the broad provisions of our attachment laws, however, this attachment cannot be good if Section 297 takes away the jurisdiction of the Court over the cause of action; but no reason has been suggested why the legislature should have intended thus to change the policy and operation of our attachment laws. Section 297 has no reference to non-resident individuals and does not limit the right to sue, or

the right to the writ, as against them, and I cannot conceive of any reason, why the legislature should have intended to take away jurisdiction in one case and leave it undisturbed in the other.

As heretofore shown our Courts had jurisdiction when the statute was passed to entertain suits against all non-residents, individual or corporate, but the difficulty was in reaching either non-resident by our process. In respect to non-resident corporations, however, the State, under its power to impose the terms upon which they might transact business here, required that such of them as did so should submit to the jurisdiction of our Courts in the cases referred to, but the jurisdiction of the Courts is not limited to such cases. The jurisdiction as to the cause of action remains as it was before; it is enlarged as to the person to the extent that such corporations are compelled to submit to it. At the suit of a non-resident plaintiff, such corporation is not required to submit to our process, except in the cases provided for; but if it should do so in any other case by voluntary appearance, the jurisdiction of the Court to try the case is the same as it was before the statute. The defendant corporation in this case can voluntarily appear and try the case on its merits like any other non-resident; but it has no better right to question the jurisdiction, or quash the writ, than any other non-resident sued on a like cause of action.

Statutes providing for the attachment of the property of foreign corporations, and statutes requiring them to submit to the jurisdiction of the Courts of another State, are fully considered and the operation of each pointed out in St. Clair vs. Cox, 106 U. S. 330.

This section was not new to our law when enacted in the Act of 1868. Its substantial features are found in the Act of 1834, Ch. 89. By that act any foreign corporation transacting business in the State was made liable to suit in our Courts, and obliged to submit to process on any dealings or transactions in the State. This act is found in the Code of 1860, Art. 26, Sec. 7 (Code, 1888, Sec. 295), and Art. 75, Sec. 100, and continued to be the law up to 1868. By the Act of 1834 such corporations were required to submit

to our process at the suit either of residents or non-residents, but only on dealings had in the State, and the important change made by Section 297 was to make them subject to process at the suit of a resident on any cause of action, while their subjection to process at the suit of a non-resident was left substantially, as it was under the Act of 1834. The Act of 1834 was construed in Insurance Co. vs. Dawson, 2 Gill 265. In that case a foreign insurance company doing business in Maryland was sued by a resident plaintiff on a policy issued here, and its property was also attached. The point was made that the Act of 1834 superseded the Act of 1832, Ch. 280, under which the property of non-resident corporations was made subject to attachment, but the Court held that the object of the Act of 1834 was to give an additional remedy and not to deprive the creditor of the one afforded by the previous law.

And in the recent case of The Fairfax Co. vs. Chambers, *supra*, the point was expressly made that the section in question limited the jurisdiction of our Courts to the causes of action therein set forth, but the Court of Appeals says: "The object of the statute was not to restrict, but to enlarge the jurisdiction of our Courts over foreign corporations doing business in the State, and it therefore makes such corporations amenable to process and subject to the jurisdiction of our Courts in the cases mentioned in the statute. In all such cases the corporation upon the service of process is bound to appear and submit itself to the jurisdiction of the Courts of this State."

In the case against the Fairfax Co. the plaintiff was a non-resident, the defendant a foreign corporation not transacting business in Maryland, and the contract sued on was made in West Virginia and the breach occurred in that State. The defendant voluntarily appeared, the case was tried and the Court of Appeals in sustaining the jurisdiction also says: "Our Courts have jurisdiction in regard to contracts whether made in or out of the State," and if the defendant appears they can try the case.

A similar statute has been construed by the Court of Appeals of New York. The provision of the New York Code of 1849, in respect to suits by non-

residents was, as is stated in Cromwell's case, 49 Md. 381, precisely the same as Section 211 of 1868. It was held in McCormick vs. Pennsylvania R. R., 49 N. Y. 303, that the statute did not limit the jurisdiction of the Court to the causes of action specified. The case of Jones vs. Norwich Co., 50 Barb. 193, so far as it held the contrary, was overruled in McCormick's case. The same Court in Robinson vs. Oceanic Co., 112 N. Y. 315, in reviewing the legislation on this subject and referring to the New York Statute of 1849, says, "This section did not assume to define all the cases in which actions could be brought against foreign corporations, and did not absolutely limit the power and jurisdiction of the Courts mentioned. It specified the cases in which foreign corporations could compulsorily, by service of process in the mode prescribed by law, be subjected to the jurisdiction of the Courts. It did not deprive the Courts of any of their general jurisdiction." By the Code of Civil Procedure of 1882, the New York Statute was changed so as to expressly limit the jurisdiction to the cases therein specified, and it was under the new statute that it was held that there was no jurisdiction, the Court at the same time stating that under the Statute of 1849 (which is the same as our statute), the jurisdiction would not have been affected.

Further, the section in question applies only to foreign corporations doing business in Maryland. The jurisdiction of the Court over a suit by a non-resident against any other foreign corporation on a cause of action arising out of the State is not taken away, and if it voluntarily appears the Court can try the case. The foreign corporation doing business here need not submit to our process in such a case, but if it does I cannot see why the section should be so construed as to take away the jurisdiction, when it is not affected in the case of a similar suit against a foreign corporation not transacting business in the State.

Again, it is provided that "nothing in this article shall prevent or affect the issue of attachments against corporations as now or hereafter allowed by law." Attachments, therefore, according to this proviso, may issue now, as they did before the act, on a cause of action which did not arise in the State, but if the construction of the garnishees is correct the result would be that the legislature has attempted to preserve to the non-resident plaintiff the right to an attachment, while at the same time taking away from the Court all jurisdiction over his cause of action. I cannot think that such was the intention of the act, but rather that the express preservation of the right to attach makes it more clear that there was no intention to take away the jurisdiction.

The garnishees rely on the cases of Myer vs. Liverpool Company, 40 Md. 595; Cromwell vs. Insurance Company, 49 Md. 366; and Insurance Company vs. Bachus, 51 Md. 28. In Myer's case the plaintiff and defendant were non-residents and a foreign corporation transacting business in Maryland was the garnishee. The indebtedness of the garnishee to the defendant was on a policy of insurance issued in Chicago. The Court holds that the attachment was properly quashed because the plaintiff, as against the garnishee, was subrogated to the rights of the debtor defendant, and could recover only by the same right and to the same extent as could the debtor if he were suing the garnishee; and as the debtor could not enforce this Chicago contract in Maryland, the garnishee was not liable to the plaintiff in the attachment. The defendant could not enforce his contract in this State because the corporation had not agreed, and by the Act of 1868 was not required, to submit to our jurisdiction at the suit of a non-resident on such a cause of action. It was not in the State for the purposes of such a suit, and not subject to our process. As the defendant corporation in this case could certainly sue Dobler & Mudge, the garnishees, in this State for its debt and property, and the plaintiffs are subrogated to the rights of the defendant, it would rather seem to follow from Myer's case that this attachment is good.

In Cromwell's case the foreign corporation, as in Myer's case, was the garnishee; the point in dispute was whether the contract between the garnishee and the debtor was a Maryland contract or not, and it having been determined that it was not, the case was then precisely like that of Myers,

and the decision was the same and on the same grounds. In Bachus' case there was no attachment; it did not appear what was the residence of the plaintiff or the place of contract, and the question of jurisdiction under Section 211 of 1868 was not properly raised and therefore not passed on.

It thus appears that the question raised by this motion was not involved or decided in any one of these cases. It is true, however, that language is used in these cases which has been construed as an expression of the opinion by the Court of Appeals that under Section 297 our Courts have no jurisdiction as between a non-resident plaintiff and a foregin corporation over such a cause of action as is here involved. But I do not think the Court meant to be so understood. That such was not its meaning seems to be clear from the case of the Fairfax Company, where it is expressly held, in construing this Section, that our Courts have jurisdiction of a suit by a non-resident against a foreign corporation, although the contract sued on was made in West Virginia, and the breach occurred in that State. In fact, the law of this case, as I understand it, is that the section, as to the cause of action, is neither the grant of a new, nor a limitation on the old jurisdiction, and it thus meets each theory of the garnishees.

As this Court, therefore, in my judgment, has jurisdiction over the cause of action, and as in attachment proceedings a foreign corporation "may be made a defendant as other non-residents," the motion to quash cannot be sustained. In view of the importance of this jurisdictional question I have considered the motion to quash as if the defendant were within the terms of the statute. The statute however applies only to such foreign corporations as are deemed to hold and exercise franchises in the State, and even if I am wrong in thinking the Court still has jurisdiction as against them, at the suit of a non-resident; over such a cause of action as is here sued on, although arising out of the State, the jurisdiction is not affected as against this defendant, because it is not in that class of foreign corporations.

The second ground alleged has been withdrawn, and the motion to quash for the reasons stated is overruled.